**Justin D. Leonard**, OSB 033736
  Direct:  971.634.0192
  Email:  jleonard@LLG-LLC.com
**LEONARD LAW GROUP** LLC
4110 SE Hawthorne Blvd. PMB #506
Portland, Oregon 97214
Fax:  971.634.0250

Counsel for Trustee Amy Mitchell

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 17-32770-thp7 |
| **Irwin Robert Pearlstein and Chris Ramsower-Pearlstein,** | **TRUSTEE'S SUPPLEMENTAL BRIEF RE: 11 U.S.C. § 704(a)(7)** |
| Debtors. | |

Amy Mitchell, in her capacity as trustee ("**Trustee**") for the bankruptcy estate of

the debtors Irwin Robert Pearlstein (now deceased) and Chris Ramsower-Pearlstein (the

"**Debtor**"), by and through her counsel, responds to the Court's May 9, 2022 request for

briefing on the scope and application of 11 U.S.C. § 704(a)(7) in advance of the May 10, 2022

hearing.

## INTRODUCTION

In a letter dated May 5, 2022 (Doc. 59), the Trustee requested the hearing to

clarify an underlying point of contention of the parties as to the Court's comments at the last

hearing on April 26, 2022 regarding a chapter 7 trustee's duty to provide "information" under 11

U.S.C. § 704(a)(7) – specifically whether the Court ruled that a creditor (or any party in interest

in a chapter 7 case) is entitled to obtain all documents in the custody of a chapter 7 trustee or

their counsel – including all non-privileged emails, notes, and work-product of both the trustee

and counsel. The letter explained that, based on the Debtor's consent and in reliance on a

protective order, the Trustee was prepared to turn over substantially all records – but not because 11 U.S.C. § 704(a)(7) required such breadth, as unsecured creditor Robert Sanders ("**Creditor**") contends. Exhibit A of the Trustee's May 5, 2022 letter effectively inventories the Trustee's records and details the records to be produced as well as the few to be excluded.

In light of the creditor's understanding of the Court's comments at the April 26, 2022 hearing, and despite the breadth of what the Trustee has offered, the creditor is not willing to accept anything less than literally <u>all the documents</u> that exist in the Trustee's and Trustee's counsel's possession, with the exception of communications with law enforcement and the Trustee's attorney-client privileged materials. In addition, Creditor demands that the Trustee and her counsel prepare a privilege log detailing what is being withheld. These are hugely burdensome and unreasonable demands on the professionals of an effectively insolvent bankruptcy estate, and these demands are not consistent from what the Trustee and her counsel had understood from the Court's statements at the April 26, 2022 hearing. Furthermore, these demands are not consistent with the Trustee's understanding of 11 U.S.C. § 704(a)(7).

### *The Trustee's Proposed Turnover Subject to Debtor's Consent and a Protective Order*

As described in Ms. Scott's May 6, 2022 letter to the Court, the Trustee is prepared to enter into a Stipulated Protective Order (the redline attached to Ms. Scott's letter as Exhibit A) which contains minimal revisions to what the Creditor proposed. Of most importance:

1. The Trustee's proposed Stipulated Protective Order ("**SPO**") explains that the Trustee is disputing the Creditor's contention that a chapter 7 trustee has an obligation to turn over all documents to any party in interest. It notes that the Trustee is complying with turnover of the Trustee's voluminous records based on the Debtor's express consent, the exclusion of law enforcement communications, and other limitations set forth in the Order. The limitations include not requiring most of the document production files from the life insurance companies, which contain intensely personal medical records

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

subject to information protected by the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**") and which have no bearing on the Creditor's concern about potential assets of the Estate.

2. The Trustee's SPO specifically identifies and designates the types of documents to be produced. The purpose is five-fold, so

  a. the Debtor clearly understands what is being turned over to Creditor;

  b. the Trustee is assured that she has the express consent from the Debtor, as well as formal authorization from the Court (including to comply with the UST's restrictions on tax returns);

  c. the voluminous documents are designated as "confidential" by the SPO without requiring them each to be labelled as such, which would be a massive undertaking in an effectively insolvent case;

  d. all parties – and the Court – are clear on what is being turned over, and this is reflected on the Court's public record, for the benefit of third-parties who may be affected by the turnover of records that contain their information; and

  e. in the unlikely event that the confidentiality provisions of the SPO require enforcement, the SPO is clear about what exactly is protected.

3. The Trustee's SPO also identifies what exists in the Trustee's possession but is being expressly <u>withheld</u> at this time, based on the Trustee's understanding of Court's comments at the last hearing: specifically

  a. the document productions from life insurance companies that had life insurance policies in place as of the Petition Date (*i.e.,* from American General, Allianz, Accordia, and F&G), which included significant protected information under HIPAA that would be extremely burdensome to redact, and also because such materials are not

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

meaningful to Creditor's goal of identifying potential assets of the

Estate because they had no cash value at any time; and

    b.  communications with law enforcement and fraud investigators.

In Ms. Scott's May 6, 2022 letter, Ms. Scott proposes that the Court remove the signature lines

from the SPO and enter the form of Order that the Court prefers. The Trustee believes it is more

appropriate that the Court provide direction for the parties at today's hearing. That way, the

Order can specifically list the documents to be turned over. The Trustee is open to the Creditor

revising the descriptions of the listed documents, assuming the revisions are accurate. The

Trustee's descriptions were intended to provide clarity as to what was being produced and, in

certain cases, to explain the meaning of certain unclear documents. Then, once the list is set, the

Debtor can provide her affirmative consent as to that final list of items by signing the SPO.

    As explained previously to Creditor, the documents to be produced by the

Trustee represent the contents of the Trustee's counsel's electronic folder of all records, other

collected data, and the Trustee's work product / analysis spreadsheets in this case, including all

of the document productions received, other than (1) documents filed in the Court on the docket;

and (2) documents received from Creditor. <u>There is nothing more that would assist Creditor in</u>

<u>investigating the potential assets of the Estate</u>. The proposed voluntary turnover includes all the

substantive emails from the Debtors, as well as certain emails from the insurance companies

verifying the $0 cash value of their policies as of the Petition Date, all which have been "printed

to PDF" for the Trustee's records.

    The Trustee and her counsel are <u>not</u> producing the many hundreds of emails

received and sent in this case, which include communications with law enforcement authorities

and attorney-client privileged information. To the extent the emails have any substantive

information pertaining to the Estate and its assets, the information in those emails would be

duplicative of what has been downloaded and organized into folders and subfolders by the

Trustee's counsel and is subject to turnover with consent of the Debtor. In other words, the

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

Trustee and her counsel are not aware of substantive information regarding the Estate's assets, or her investigation into such assets, in those emails that would not be duplicative. Therefore, in light of the effectively insolvent estate[1] and the duplicity of the information, the Trustee has not proposed to review, collect, and selectively produce her and her counsel's emails, redact them as necessary, and them prepare a privilege log (as demanded by the Creditor) as to all the withheld communications.

## SCOPE OF 11 U.S.C. § 704(a)(7)

The Trustee believes that one of the primary roles of a chapter 7 panel trustee is to support the effort to make the bankruptcy system as transparent as possible – including through a trustee's duty to provide information about the Estate and its administration upon request under § 704(a)(7). In this case, the Trustee believes that, through her counsel, she has provided significant information to the Creditor – including answering <u>all of the Creditor's substantive questions</u> regarding the Estate and its administration. For example, see Exhibit F of Creditor's Objection (Doc. 53), pages 2-6 (answering in detail all of the Creditor's questions regarding the pending settlement and the assets). Through the Trustee's proposed SPO and subject to the Debtor's consent, the Creditor and his counsel will be able to evaluate the voluminous records – as well as the Trustee's work product analyzing the records – for themselves.

---

[1]      In regards to the insolvency of the Estate, the Trustee's investigation of potential assets has been time-intensive. The Trustee followed the many leads alleged by the Creditor, many which derived from the information Creditor obtained as the family law attorney representing Mr. Pearstein from 2004-2014. Fees and costs of counsel are over $55,000.

The proposed settlement, which has been withdrawn and will be revised to provide further clarifications, would generate $54,000 for the Estate. There are no other assets in the Estate, and the Trustee does not expect to recover more than this amount because the Trustee does not expect the Creditor to submit an offer for the Estate's claims after reviewing the evidence.

Because the Trustee has a duty to ensure a meaningful recovery to creditors, only a portion of the Trustee's fees and costs will be sought by the Trustee's counsel. Therefore, the further fees and costs arising in this case will not be recoverable.

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

Such a broad release of unredacted records is because of the Debtor's consent, not because the Trustee believes that § 704(a)(7) requires it in this case. Even if the provision is read as expansively as possible, the Trustee has to balance this duty to share information under § 704(a)(7) with her other duties, including, among others,

- a duty under § 704(a)(2) of "being accountable for all property received," including safeguarding protected personal and financial information of the Debtors and of third parties within the Trustee's custody;

- a duty to cooperate with investigations of law enforcement, report abuse (spousal, elder, creditor, etc.), and make criminal referrals to the U.S. Attorney, which are expected to remain confidential;

- the duty to investigate the financial affairs of the debtor under § 704(a)(4); and

- the duty to liquidate assets as expeditiously as possible under § 704(a)(1) with an eye towards minimizing expense of the administration of the Estate – in order to maximize the recovery to creditors.

The challenge for a chapter 7 trustee is that these broad, expansive duties are often competing and must be balanced on a case-by-case basis. As a simple example, § 704(a)(1) requires expeditious administration of a case, yet effectively investigating and pursuing assets – including through litigation, when necessary, can create delay.

In terms of a chapter 7 trustee's application of § 704(a)(7) in practice, balancing the duty to provide information with these other responsibilities – including minimizing the impact on the Estate both in terms of expense (to increase the benefit to creditors) and time of administration (to speed the administration of the case) – varies greatly depending on the case. In a simple case, providing information to creditors is easy. However, in cases like this one where the trustee's investigation has been extremely broad in scope, or when the Trustee seizes or images hard drives of the debtor as part of the investigation, the information and documents

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

obtained are voluminous. As a result, responding to requests of parties in interest becomes more burdensome; conversely, as the volume of records increases, it often becomes less likely that, taken as a whole, the information and documents "concern[] the estate or the estate's administration." Accordingly, in a document-heavy case like this one, it is reasonable for a trustee to ask that a requesting party provide some specificity in terms of the information or documents sought, in order to limit the burden on the Estate and to ensure that the information provided is relevant and indeed "concern[s] the estate or the estate's administration."

### *Overview of Legal Authorities*

Under 11 U.S.C. § 704(a)(7), a chapter 7 trustee shall, "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

The Chapter 7 Trustee's Handbook, prepared by the U.S. Department of Justice's Executive Office for United States Trustees to direct and regulate the actions of chapter 7 panel trustees, devotes exactly one sentence to this Code section: "A trustee shall have a system in place to timely respond to reasonable inquiries on behalf of debtors, creditors, attorneys, the court, and other interested parties." *See* https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials at page 4-30 (§ 4(H)).

Case law interpreting this Code section is scarce. The Trustee has found no opinions of this Court interpreting § 704(a)(7), and the Trustee has found no Ninth Circuit opinions addressing the statute – and very few opinions from other Circuits.[2]

---

[2]  When discussing notice issues, the Seventh Circuit suggested that § 704(a)(7) imposes upon the trustee a duty to inform "of the progress of the liquidation." *See Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 599 (7th Cir. 2008). It is a broad leap, however, to go from a duty to keep all parties informed to a duty to transmit all documents and communications of the Trustee to any party in interest.

**Page 7 of 17 – TRUSTEE'S SUPPLEMENTAL BRIEF**

The only recent opinion within the Ninth Circuit interpreting § 704(a)(7) was issued by the Honorable Bankruptcy Judge Mary Jo Heston in the Western District of Washington: *In re Munce*, Case No. 13-45569, 2017 Bankr. LEXIS 3516 (Bankr. W.D. Wash. Oct. 11, 2017). In the process of evaluating creditors' objection to compensation to a chapter 7 trustee, Judge Heston considered whether the chapter 7 trustee had breached his duty to provide the creditors with requested information under § 704(a)(7). The court explained:

> The Trustee is required, unless otherwise ordered by the Court, to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest . . . ." § 704(a)(7). This provision does not require the Trustee to disclose all information to every creditor, especially a party actively litigating against the estate. 6 Collier on Bankruptcy ¶ 704.10 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017). A trustee is also not required to furnish information protected by the attorney-client privilege. *See In re Lee Way Holding Co.*, 120 B.R. 881, 907 (Bankr. S.D. Ohio 1990).

*Id.* at *19. The court determined that the creditors failed to establish that the trustee was under any obligation to provide the valuation information they requested or that the information would have accomplished what they had anticipated. *Id.* at *19-20. Judge Heston determined that the trustee had properly exercised his duty under § 704(a)(7). *Id.*

It appears that there are only two other opinions by courts within the Ninth Circuit interpreting § 704(a)(7). In *In re Walters*, 136 B.R. 256, 258 (Bankr. C.D. Cal. 1992), the bankruptcy court concluded that creditors were <u>not</u> entitled to the documents compiled and prepared by the trustee's accountants, during the time when the trustee was investigating and prosecuting significant fraudulent transfer claims against the Debtor's wife. When interpreting the Trustee's duty, the court considered the <u>information needed by a creditor to determine what the trustee is doing to protect the estate's interests</u>, which should be provided, from the materials gathered to assist the trustee in determining the facts.

In *Walters*, the creditors had argued that, as creditors of the bankruptcy estate, they are entitled under § 704(a)(7) to cost-free access to the trustee's accountants' audit

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

materials (*i.e.,* the records generated by the trustee's investigation of fraudulent transfers). The

creditors argued that they had already vicariously funded the preparation of these records and

documents since the fees of trustee's professionals, including the accountants, would be paid out

of the bankruptcy estate. *Id.* at 257. The court concluded that the duty to provide "information"

did not include the production of documents regarding the fraudulent transfers against the target,

Mrs. Walters:

> If [the creditors] sought to determine the status of the adversary
> proceeding against Mrs. Walters, while the adversary proceeding was
> still pending, and requested information concerning what steps
> Trustee was taking to prosecute that action diligently, then that
> information would be analogous to the information required to be
> produced in *Modern Office Supply*. The Audit Materials, however,
> essentially were prepared to assist Trustee in determining the extent of
> the facts underlying his causes of action against Mrs. Walters and the
> Trusts. Creditors do not need such information to decide whether
> their interests are being protected.

*In re Walters*, 136 B.R. 256, 258 (Bankr. C.D. Cal. 1992).

The Trustee recognizes the *Walters* case is different in that its trustee had actively

pursued fraudulent transfers. In this case, despite significant effort, the Trustee has not identified

meaningful fraudulent transfers or other claims of significant value that can be pursued by the

Estate, beyond the issues identified in the Trustee's settlement notice. However, proving a

negative can be difficult. In this case, Creditor wants to see the Trustee's records to evaluate the

Trustee's conclusion for himself – including to determine whether the Trustee and counsel has

been negligent, as well as to evaluate whether to make an offer for the claims of the Estate. The

Trustee wants to cooperate in order to efficiently administer the Estate for the Creditor's benefit.

However, the Trustee requests the safeguards of the SPO as described above.

The only other case from within the Ninth Circuit is *In re S&B Surgery Center,*

*Inc.*, 421 B.R. 546 (Bankr. C.D. Cal. 2009), which discusses § 704(a)(7) in the context of §

1102(b)(3)(A). In the case, the court determined that the creditor committee in a medium-sized

**Page 9 of 17 – TRUSTEE'S SUPPLEMENTAL BRIEF**

case should establish a website to provide access to information to the unsecured creditors pursuant to its duty under § 704(a)(7). (The Trustee notes that in this case, Creditor has already received substantially more information from the Trustee than what would be provided on a public website.)

The *S&B Surgery Center* opinion relied on what appears to be the most referenced opinion in this area: *In re Refco Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006). In *Refco*, Judge Drain found that a creditor committee's duty to provide "information" pursuant to § 1102(b)(3) was analogous to the trustee's duty under § 704(a)(7). The Refco court addressed the various duties of a trustee and explained that, to "override the duty to disclose, a trustee should point to a countervailing fiduciary duty, such as to protect creditors and the estate from a particular harm, whose performance is more important than avoiding the harm resulting from withholding the information in question." *Id.* at 194 (emphasis added). As applied to this case, the Trustee discusses these countervailing fiduciary duties further below.

Notably, Judge Drain noted that a creditors committee should not have to forward the raw data it considers "as if it were a virtual information bank for its constituents." *Refco*, 336 B.R. at 194, referencing *In re Gilcrist Co.*, 410 F.Supp. 1070 (E.D. Pa. 1976). Likewise, the Trustee contends that she should not be required to furnish documents containing raw financial data in order to comply with the duty to provide information concerning the Estate.

The *Refco* court recognized that the application of § 1102(b)(3)(A) requires a balancing of a chapter 11 creditor committee's duties of disclosure to its constituents (usually the unsecured creditors) with the need to protect sensitive information, to preserve the attorney-client privilege, and (where applicable) to comply with securities laws. *Id.* at 197. Clearly, this balance must be struck in each individual case, and varies from one case to another.

This case-by-case balancing of interests discussed in *Refco* is already complicated. However, *Refco* and most of the opinions discussing it took place within the context of a business case in chapter 11. While business cases may indeed involve sensitive information (including

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

trade secrets, customer lists, and employee records that must be safeguarded), consumer cases can be vastly more complex in terms of the privacy interests that can be implicated and how to exclude such information or otherwise protect those interests, as discussed further below. Furthermore, while the dollar figures at issue are typically magnitudes greater in chapter 11 business cases, the resources for administering those cases (including complying with requests) are as well. Therefore, the balancing required for a fiduciary is quite different.

For example, in contrast to this consumer case, a chapter 7 trustee of a corporate entity would be less concerned about a creditor's request for six years of a business debtor's banking records, including all checks paid and deposited, along with all its credit card transactions, since few privacy interests are implicated. The corporate debtor would not be operating, and a corporate entity lacks the same privacy interests as an individual. Typically, third parties transacting business and appearing in those records would also be businesses, rather than individuals.

In contrast to the corporate case, the documents held by a chapter 7 trustee in a consumer case may implicate many more privacy interests and other rights and expectations of third-parties, including the following:

- Banking records of a consumer debtor or an individual (non-business) third-party subject to a FRBP 2004 exam already trigger significant privacy rights generally. However, as in this case, the checks paid and received by a debtor or another third-party, as well as the debit and credit card transactions appearing on the statements, often involve individuals with their own privacy interests – including, for example, on checks deposited: the payor's names, address, and phone number, as well as their checking account information, including the account number itself. The payors have no knowledge that a chapter 7 trustee even holds such information or that such information might be shared. In this case, the Trustee's records

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

generally cover at least six years – over four years pre-petition to identify potentially avoidable transfers, plus in this unique, reopened case, two years post-petition.[3]

- Additionally, in these modern times, bank and credit card statements contain detailed and often-shocking personal information of a debtor (and sometimes non-debtors). Such transactions can reveal intimate details of a person's lifestyle, including records of presumably private transactions (*e.g.,* spending on specialized medical clinics or therapists – information that would ordinarily be protected by HIPAA – or spending on socially taboo goods or services, such as social vices, that could have social ramifications if known). Even more generally, as in this case, such documents reveal so much about a person by documenting how one spends money on a day-to-day basis.

- As in this case, trustees also receive personal health information that is subject to HIPAA. Personal medical information rarely involves assets of the Estate, and therefore would not be appropriate to turn over under 11 U.S.C. § 704(a)(7). However, the expense of searching for and redacting such information from documents can be significant.

---

[3]   It could be argued that the Trustee should not have a right to obtain bank documents and credit card statements covering <u>two years after the Petition Date</u>, because such assets presumably belonged to the post-petition Debtors. The Estate had no obvious rights in such funds. In this case, Creditor was convinced that the Debtors had secreted assets. If that was true, the Trustee believed that the Debtors' post-petition activity – particularly after the bankruptcy case had been closed – might reveal hidden assets.

Furthermore, in this case, the Debtors fully cooperated with the Trustee's broad requests and did not challenge them. When the Debtors did not have access to certain items, the Debtors did not object to the Trustee obtaining them directly under FRBP 2004, even records two years after the Petition Date.

**Page 12 of 17 – TRUSTEE'S SUPPLEMENTAL BRIEF**

- As in this case, trustees also receive documents with personal identifiable information ("**PII**") of third-parties, including minors. These parties did not voluntarily avail themselves of the bankruptcy system. These parties have no knowledge that the Trustee is responsible for safeguarding their information. Again, the expense of searching for and redacting such information from documents can be significant.

- Chapter 7 trustees regularly receive tips, as well as other information and documents from third-parties or their attorneys, that they reasonably expect a trustee will keep private and confidential. Those cooperating parties may be directly adverse to the requesting party. If a Trustee's duty to provide information to parties in interest encompasses tips and other "intel" and cannot remain confidential, it will become less likely that chapter 7 trustees will receive cooperation from parties who are already reluctant to come forward and assist a trustee's investigation.

- As in this case, chapter 7 trustees become involved in law enforcement and regulatory investigations and have a duty to cooperate. Often even the existence of these investigations are supposed to remain confidential, besides the information received and/or provided. In such cases, blanket requests for "all documents" could not be complied with, and a chapter 7 trustee would not be allowed to explain why.

- Chapter 7 trustees have a duty to document and report crimes, as well as instances of potential abuse. As one example, pursuant to 18 U.S.C. § 3057, trustees with reasonable grounds to believe that a violation of Federal law has occurred have a duty to report the facts and circumstances to the appropriate U.S. Attorney. Such crimes can often involve parties

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

other than the debtor. Such reports, including simply their existence, are to remain confidential.

- Tax returns of a debtor are considered to be particularly sensitive. The Trustee's Handbook devotes nearly two pages to limiting the Trustee's use of a tax return and ensuring the return is protected. *See* Trustee's Handbook, https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials (March 15, 2022 version), Items #1-12 of § 5(d) at page 5-22 & 5-23, attached as Exhibit A hereto.

According to Creditor's perspective, any party in interest should be entitled to demand turnover of any of such records at any time from a chapter 7 trustee under § 704(a)(7) without the need for a subpoena (and the rules that govern such production). If so, that extreme view of "transparency" in bankruptcy would fundamentally change a chapter 7 trustee's role – upsetting the balancing of the competing fiduciary duties that a chapter 7 trustee is charged with maintaining, and likely causing a breach of the trustee's duties in various respects. That is why the duty to inform cannot possibly equate to a duty to share the Trustee's file.

The statute itself is clear. Under § 704(a)(7), a chapter 7 trustee has a duty to provide certain "information" – not private financial documents. Creditor's reading conflicts with the Bankruptcy Code itself. For example, Creditor contends that the Trustee is obligated under § 704(a)(7) to turn over the many pre- and post-petition tax returns obtained by the Trustee. Besides this reading violating the UST's directives in the Trustee's Handbook (*see* Exhibit A), 11 U.S.C. § 521 would be rendered meaningless.

Section 521(e)(2)(A) requires the debtor to produce a copy of the most recent tax return to both the trustee and to any creditor that requests a copy. The trustee has no responsibility under the Bankruptcy Code for providing a tax return. Pursuant to § 521(e)(2)(C), if the debtor fails to provide the tax return to a creditor upon request, the remedy is dismissal of

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

the case. The remedy is not that the trustee turns over the tax return. *See also* Fed. R. Bankr. P. 4004(b)(3), (4), and (5) (debtor has duty to provide tax return, and trustee and creditors receiving tax return must safeguard the confidentiality of the tax information). If § 704(a)(7) required the Trustee to turn over all documents received in the exercise of her duties, then § 521(e)(2)(A)(ii) would be unnecessary, because the creditor could simply request the debtor's return under § 704(a)(7).

Counsel for the Office of the US Trustee has been consulted regarding this matter, and the UST is not prepared to involve itself and/or take a position at this time. However, in the discussion, counsel for the UST noted the significant responsibilities of both the UST and panel trustees to manage and safeguard personally identifiable information and protect privacy interests. As an example, counsel for the UST noted that the UST regularly receives requests to provide a transcript of a Meeting of Creditors. Even if the requestor is a creditor or other party in interest, the UST will not turn over their transcript (assuming one has been prepared) due to privacy concerns. Only audio of a Meeting of Creditors may be obtained from the UST. Similarly, if the UST takes an FRBP 2004 examination of a debtor, the UST will not even allow a creditor to sit and observe the proceeding – let alone obtain the audio or a transcript – due to privacy concerns. The only exceptions are if the FRBP 2004 exam order expressly includes the creditor, or if the debtor consents to the creditor's attendance. Therefore, while transparency within the bankruptcy system is important to the UST, so is privacy of its participants – even of debtors who voluntarily availed themselves of the system.

In this case, the Trustee is only comfortable turning over the documents to the Creditor because the Debtor has consented, in order to facilitate Creditor's investigation and allow the case to be administered efficiently – not because 11 U.S.C. § 704(a)(7) compels this result. Creditor complains that the Trustee did not do this earlier in the case. There are two reasons. First, the Trustee requested specificity in what was being requested and why, and none was provided. Creditor simply demanded everything. As explained above, in light of law

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

enforcement communications and HIPAA concerns (among other things), the Trustee was not comfortable producing everything, even pursuant to a confidentiality agreement or protective order.

Second, the Trustee is indeed producing nearly everything now, but that is because the Debtor only recently consented. Mr. Pearlstein passed away in November of 2021. Mr. Pearlstein considered the Creditor, his former family law attorney, to be an abusive and vexatious creditor – just as Creditor vehemently contends Mr. Pearlstein has secreted assets and made material misrepresentations to the Court and the Trustee. Therefore, even though the Debtors fully cooperated with the Trustee's investigation, it was unlikely that Mr. Pearlstein would agree to any form of turnover of documents to Creditor. To be clear, the Trustee does not take a position in the parties' dispute. Furthermore, the Trustee does not have a duty to protect debtors from a purportedly vexatious creditor (applying Mr. Pearlstein's characterization). However, in light of Creditor's broad demand for turnover of all the records – even when those have less connection to the Estate or its administration under § 704(a)(7) – the Trustee would not be comfortable with compliance without consent of the Debtors, including for the reasons discussed above.

In hearings on the reopening of the bankruptcy case – ultimately overruling the Debtors' motion for reconsideration – the Trustee and her counsel understood the Court (then the Honorable Trish Brown) to express concern on the record relating to Creditor's intent to investigate the Debtors and third parties. The Court advised that the Trustee, as an independent third-party, should be responsible for the investigation. As a result, the Trustee has not been comfortable transferring any authority of her investigation to Creditor – another complaint raised by Creditor.

Under the circumstances, the Trustee is grateful for the Debtor's willingness to allow Debtor's private information to be transferred to Creditor in order to allow Creditor to evaluate the information for himself. As a result, the Trustee anticipates that Creditor will either

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

consent to the Trustee's settlement with the Debtor or else make an offer to acquire the Estate's claims for himself. Either way, this long-running case should be able to be resolved promptly.

## CONCLUSION

A trustee has competing duties that must be balanced on a case-by-case basis. Interpreting Section 704(a)(7)'s duty to provide not just "information" but also the turnover of documents would breach a chapter 7 trustee's other duties as a fiduciary. In this case, by obtaining the Debtor's express consent to turnover of documents subject to a protective order that ensures confidentiality will be maintained, the Trustee believes that she has appropriately balanced her duty under 11 U.S.C. § 704(a)(7) along with her other duties as a fiduciary (including safeguarding protected personal and financial information of third parties who also have privacy interests). Therefore, the Trustee is voluntarily producing substantially all of her records regarding her investigation of Estate assets within the safeguards of the proposed stipulated protective order. Creditor's demand for even more – *i.e.,* all of the many hundreds of emails of the Trustee and of her counsel and the creation of a privilege log – in the context of an essentially insolvent estate is not reasonable.

DATED: May 10, 2022.

LEONARD LAW GROUP LLC

By: /s/ Justin D. Leonard
     **Justin D. Leonard**, OSB 033736
     Direct: 971.634.0192
     Email: jleonard@LLG-LLC.com
Counsel for Trustee Amy Mitchell

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com

### d.  TRUSTEE ACCESS AND CONTROL OF DEBTOR TAX RETURNS

(1) A trustee shall retain a debtor's tax returns in the appropriate section (e.g., the financial section) of the case file, either paper or electronic, from the date received until the tax returns are no longer necessary to either prepare for the meeting of creditors, to aid the trustee in the administration of the case, or to support any litigation in the case.

(2) Before the meeting of creditors, a trustee shall generally limit access to a debtor's tax returns to only trustee personnel directly involved in preparation for the meeting of creditors and case administration.  Unless necessary to aid the trustee in carrying out the trustee's duties, no other office personnel shall be permitted to view or to copy a debtor's tax returns.  The trustee shall provide mail and file clerks with guidance on the proper handling of debtor tax returns.

(3) A trustee shall limit the number of copies made of a debtor's tax returns to the minimum necessary to enable trustee personnel to carry out the trustee's duties.  Once the need for a copy no longer exists, that copy shall be destroyed promptly using one of the methods described below.

(4) A trustee shall not permit copies of a debtor's tax returns to leave the trustee's office before the meeting of creditors, except as necessary to carry out the trustee's duties.  The trustee, however, may provide copies of a debtor's tax returns to the United States Trustee upon request of the United States Trustee.  A trustee may also provide copies of a debtor's tax returns to the trustee's retained professionals as necessary to enable them to perform their duties.

(5) A trustee shall not provide copies of a debtor's tax returns to a creditor or any other party in interest, except pursuant to a court order or as an exhibit to a pleading that by rule must be served upon that creditor or party in interest.

(6) A trustee shall not permit any person other than the debtor, the debtor's attorney, or the representative of the United States Trustee to view a debtor's tax returns at the meeting of creditors.  The exception to this is that, with the express written consent of the debtor and, if applicable, the debtor's attorney, the trustee may show a debtor's tax returns to a party in interest or the party's attorney.  At the conclusion of the meeting of creditors, the trustee shall either return all copies of the debtor's tax returns to the debtor or return the copies to the trustee's office.  If the trustee returns the debtor's tax returns to the debtor at the meeting of creditors, it is a recommended practice that the trustee shall state such on the record.

(7) Under no circumstances shall copies of a debtor's tax returns be discarded by the trustee at the meeting site or left unprotected so that they can be viewed by unauthorized persons.

**EXHIBIT A**
**1 of 2**

(8) A trustee shall ensure that all copies of a debtor's tax returns in the trustee's possession are destroyed following the meeting of creditors, unless the trustee deems it appropriate to maintain copies for use in conjunction with further proceedings in the case.  The trustee shall create and maintain a system to ensure that debtor tax returns that are not destroyed immediately after the meeting of creditors are maintained no longer than provided in this policy, and that the tax returns are handled in such a way as to protect a debtor's privacy to the extent reasonably possible.  A suggested practice is to maintain a log of the tax returns not destroyed or returned following the meeting and periodically review the continued need to maintain such returns.

(9) After the meeting of creditors, a trustee shall not provide copies of a debtor's tax returns to any person other than the trustee's professionals or the United States Trustee except, when necessary, a trustee may use a debtor's tax returns as an evidentiary exhibit in connection with a court proceeding.  If the trustee uses a debtor's tax returns as an exhibit, all information not germane to the issue before the court shall be redacted from the tax returns.

(10)    If a trustee comes into possession of copies of a debtor's tax returns filed after the commencement of the case, those tax returns shall be handled and safeguarded in accordance with these guidelines.

(11)    Hard copies of debtor tax returns shall be destroyed by shredding in the trustee's office or by a qualified professional firm that provides appropriate safeguards.  Furthermore, the trustee shall institute and maintain procedures to assure the security and ultimate permanent deletion of all electronic copies of debtor tax returns, including copies attached to email messages.  Permanent deletion of electronic files should follow industry standards and best practices.

(12)    These guidelines control to the extent that they conflict with other records retention guidelines of the United States Trustee.

### e.  DUTY TO REPORT LOSS OR POTENTIAL LOSS OF PERSONALLY IDENTIFIABLE INFORMATION (PII)

(1) The trustee has a duty to report to the United States Trustee the loss or potential loss of personally identifiable information (PII), including the theft or the accidental loss of bankruptcy papers (such as meeting of creditors notices and final reports), desktop computers, laptops, PDAs, and removable drives such as USB flash drives and CDs.  The trustee must report any loss or potential loss upon discovery even though the trustee may have limited information about the loss at that time.

(a) For purposes of this Handbook, the Program has adopted the definition of PII used by the Office of Management and Budget (OMB).  OMB defines PII as information which can be used to distinguish or trace an individual's identity, such as name, Social Security number, or biometric records, etc., alone or when combined with other personal or identifying information, which is linked or linkable to a specific

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date below, I caused notice of the filing of this **TRUSTEE'S SUPPLEMENTAL BRIEF RE: 11 U.S.C. § 704(a)(7)** to be served on interested parties requesting notice through the Court's CM/ECF system, and the following interested parties requiring notice by US Mail:

***None***

DATED:  May 10, 2022

By: /s/ Justin D. Leonard
Justin D. Leonard, OSB 033736

LEONARD LAW GROUP LLC
4110 SE Hawthorne PMB 506
Portland, Oregon 97214
leonard-law.com